Case number 221080 Northern Iowa, United States v. Sylvester Cunningham Alright, Ms. Nash, we'll hear from you first. May it please the Court, Counsel. My name is Mackenzie Nash, and I represent the appellant in this case, Sylvester Cunningham. I've requested to reserve five minutes of my time for rebuttal. You may, but you'll have to watch the clock because if you go beyond it, it'll be used. Thank you, Your Honor. Alright. Mr. Cunningham raises three challenges in relation to his convictions in this case. Unless the Court directs my attention elsewhere, this morning I will primarily focus on the first issue, whether 922G1 is unconstitutional as applied to Mr. Cunningham. Because Mr. Cunningham distinguished himself from persons historically barred from Second Amendment rights. First, because Mr. Cunningham's underlying felony convictions, driving under the influence of alcohol and a prior felon in possession conviction, are not violent, 922G1 is unconstitutional as applied to him. Bruin set forth a two-part test to determine whether a firearm restriction unconstitutionally burdens an individual's Second Amendment right to bear arms. The first question is whether the regulated conduct is protected by the Second Amendment. And if it is, the second step of the analysis is to determine whether the restriction is consistent with the nation's historic tradition of firearm regulation. Here, the conduct regulated by 922G1 is possession. Possession is unquestionably protected by the Second Amendment's plain text, as well as Supreme Court precedent. Even if the Court here were to consider the specific conduct involved in the case, carrying a firearm, Bruin makes clear that carrying a firearm, likewise, is within the confines of conduct protected by the Second Amendment. Additionally... Just a quick question on that. The district court spends, both actually, the district court and the magistrate judge spend a lot of time on Woolsey versus Adams. Do we now, post-Bruin, do we need to get into any of that? And I'm going to ask opposing counsel the same thing. Do we just follow Bruin? Sounds to me like you're telling us to follow Bruin. I think that's right, Your Honor, and I think that Woolsey and Adams still do bear some relevance in the sense that parts of the test that Bruin applies are parts of Woolsey and Adams. So, Woolsey, for example, looks to whether or not someone is within or outside of the class of persons who were historically barred from Second Amendment protections, and articulates two different ways how someone might distinguish themselves from that class, either nonviolence or being no more violent than the regular law-abiding citizen, whereas Adams looks to the conduct, although Adams does go into the specific conduct. And I believe that Bruin makes clear that the conduct that we're concerned with in this rather than the conduct that's at issue in the case, the conduct that the individual was trying to engage in. And in Mr. Cunningham's case, that conduct is possession rather than carrying. However, even if the court were to look at the carrying aspect of the case, we would submit that under plain error review, even, in light of Bruin, that that is protected by the Second Amendment. I would also like to address one issue that's recently been discussed by the Third Circuit and I think less recently by other courts. Individuals with felony convictions are not outside the scope of the Second Amendment. First, the Second Amendment's plain text provides the right of the people to keep and bear arms. There's no qualification based on class or status. Bruin reaffirmed this reading of the plain text. Justice Thomas, writing for the court in his concluding paragraph, said, the Second Amendment guaranteed to all Americans the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions. All Americans does not exclude Americans with felony convictions. To read such a limitation into the Second Amendment would also vest in legislatures the power to completely, essentially nullify the Second Amendment. State legislatures, for example, if New York disagreed with the result of the holding in over the limit, a felony conviction subject to imprisonment of up to five years. So let's focus on this case for a minute. What is your position as to what Congress may do with respect to dispossessing felons? With respect to dispossessing felons in its entirety, our position is that this particular law is unconstitutional as it applies to Mr. Cunningham. Because why? Because it lacks a historic analog. The felon dispossession statute was not. I'm just trying to understand what is it that you think Congress, who may Congress dispossess and who may it not dispossess? What are we supposed to apply in your view? I think that the closest historic analog here is the dispossession of individuals who had violence in their backgrounds or presented some danger specific to firearms. And I think that the laws that dispossess those individuals of even permanent dispossession of firearms are founded in the historic traditions. So what would that mean? Which felon in possession convictions would be valid under your view? Well, Your Honor, I think that if there is an individual who has a robbery conviction, an armed robbery conviction, that may be an instance where if the robbery is a violent one, that may be an instance where the Second Amendment does not become implicated. What do you mean if the robbery is a violent one? You mean would the court go into a fact inquiry into the facts of the robbery? No, I think it would depend on what the state statute or the federal statute provided, what the elements of the offense that. You mean we would do a categorical approach? Do you think the founders had in mind a categorical approach to a violent felony? Your Honor, I'm not sure that the founders had anything that specific in mind. However, I think that if we look to the history- Well, I mean that was a little bit facetious. But you think that would be the right analysis, that we should do a categorical approach to prior felonies and decide whether they're violent, kind of like we do under the Armed Career Criminal Act? Is that your proposal? I do, Your Honor. And the reason for that- You think we should pretty much transpose the ACCA violent felony analysis into the Second Amendment? You know, I'm not sure whether it needs to go that far. For purposes of Mr. Cunningham- Well, what do you suggest? I mean, you're suggesting that we adopt some standard here. What do you have in mind? And I don't think that the court necessarily needs to adopt that standard to resolve this case, because Mr. Cunningham's prior conviction was driving under the influence that was elevated to a felony because his license was suspended. And so I don't think that the court needs to get into whether or not certain convictions would qualify as violent felonies in order to resolve this case. The district court judge said during the sentencing hearing in this case that Mr. Cunningham's only violent prior offense was an assault charge, which was a serious misdemeanor from 2003. Counsel, I take issue, actually. I think you're going too far, and I'll tell you why. Because at the time of the founding, it was based on dangerousness. And dangerousness didn't have to be reflected in the crime. You could have a situation where you told the authorities, yeah, he beat me with a club or, you know, came at me with a knife. That was good enough to dispossess felons. Now, you can make the argument that we don't have anything like that here, but I don't think it required a conviction. I think the history is pretty clear on that. Your Honor, and that may be so. And as you mentioned, I think the court doesn't need to reach that in order to resolve this case. Because in the instances, in the examples that Your Honor pointed out, the violence involves, or the danger involves, violence toward another person. Whereas Mr. Cunningham's conviction is dangerous in the same way that speeding or failing to yield at a stop sign is dangerous. Maybe, but if we had a DUI where he actually, when he was swerving, was intentionally running his car towards somebody, that could be good enough. Which again, you know, Judge Colleton was asking about the categorical approach. I think that undermines your argument that we need something about the elements of the offense. You just need to presentially present some evidence to someone that the guy is dangerous. Perhaps so, Your Honor. And I would submit that our position is, there does need to be some element of the offense. Because otherwise, we're leaving whether or not someone's protected by the Second Amendment to judicial fact finding that might be done by a preponderance of the evidence. And I would submit that that's standard. You can't have a jury trial on every case to see whether the person is dangerous. And that could be so. I don't, I think that. Is that what you're suggesting? Well, what I'm suggesting is that the court look to a more practical approach, which would involve considering the elements of the offense. Considering what? The elements of the offense, I think, is what you said. Yes, thank you, Your Honor. Couldn't the court decide that, though? I mean, it's a purely constitutional question. Would the jury have to decide whether someone's dangerous? I don't know the answer to that. I mean, it seems to me, since it's not an element, but rather, can this be applied to me, that it would be something the judge could decide? Maybe I'm wrong. And that potentially could be some type of inquiry that happens at the conclusion of every case. Like a hearing. Right. And I think that may be an approach that makes sense. And I see that I am cutting into my rebuttal. Just one more thing. You say, is the basic proposition you're making that unless the prior conviction was what you call a violent offense, that the statute is unconstitutional as applied? As applied to Mr. Cunningham. Yes, Your Honor. And how many felonies, in the range of felony convictions, how many are violent? Do you know? Have you studied the data on that? I do not have the slightest clue, Your Honor. Let's say it's 10% or 15% of all felonies are violent felonies. Would that run counter to the Supreme Court saying that, presumptively, the felon in possession statute is valid? If 80% of them would be invalid? Your Honor, I don't have a good answer to that question. My first response is that the Supreme Court's language, discussing the presumptive validity of felon in possession is dicta. And so to the extent that the court has to give that some deference, I think that deference has to also meet whether or not that language is consistent with the test that the Supreme Court set forth. And I think, in this particular case, it's not. And so that's one way to look at it. The other way is that you might try to reconcile the two. You might say, well, they wouldn't keep saying that if their test was inconsistent with it. So there must be something more to it than a rule that would make 80% of the felonies not qualifying. But we'll have to think about that. Thank you for your argument. Just real quickly, isn't there a simpler answer? And maybe I'm missing something. But isn't the answer that a facial challenge would be off the table? That it is presumptively constitutional. And ignoring the point that maybe it is 80%, but say it's 15% or 12% or 6% are invalid. Then it would seem to me that the answer is the rate of reconcile would be that the facial challenge is off the table. I don't know the empirical answer, to be clear. And I think that may be so, Your Honor. Thank you. All right. Mr. Reiner, we'll hear from you. May it please the court, counsel. I think to start with Judge Stras's question first, because I think it's an interesting question. And I think it also shows the morass one steps into when you get into this as-applied analysis. Could you stick a little better with the microphone? Oh, I'm sorry. Thank you. It also shows some of the challenges that one gets into when you get into an as-applied analysis that the Third Circuit got into with 922G. And I spent a fair amount of time looking at Adams and looking at Woolsey and looking at the Supreme Court. And I think each of those cases looks at the issue of as-applied challenges just under the Second Amendment to a regulatory scheme related to firearms in a little bit different perspective. But I don't think they're inconsistent necessarily with one another. I'm not sure any one of them necessarily. The Supreme Court, I think, probably creates, since it's the Supreme Court, probably more of a test than the others do at this point. But I think you can read them all together. They're not inconsistent with one another, is, I guess, the best way to put it. We suggested that Adams is probably being more of a two-part test analysis should have been applied and was an appropriate case to apply. The district court followed more of the Woolsey analysis. Today, I'm going to talk more about Bruin, because I think that really helps us tee up the issue. And to start, I think we need to start at the facts. This was a defendant who had been convicted of an OWI 3rd, which is a felony offense in the state of Iowa. So he had two prior drunk drivings. This was his third he got a felony. Then he got convicted of being a felon in possession of a firearm in federal court. And he was still on supervised release when he committed this offense. So he's still under that punishment when he commits this offense. Insofar as dangerousness is an aspect of prosecution, someone who commits a new crime with a firearm that's loaded while they're on supervised release, I think certainly, even without a conviction, shows a nature of dangerousness. What if it's an embezzlement crime? Say again? What if it's an embezzlement crime? And that's a felony. It is. But it's still, that's why I don't think dangerous. I think dangerous is the wrong pathway. I don't think that really quite matters. But that's what the history suggests. I mean, we can have reasonable debates. But the history is pretty clear that at the time of the founding, you could put qualifiers on that. You can say dangerousness in the sense of somebody who was convicted or whatever. But dangerousness seemed to be what folks looked at at the time of the founding. And I think Bruin's pretty clear that we have to look at the founding for what's protected. You look at the founding as well as I think the historic tradition carrying forward after that. So that tradition of how one regulates the relationship with a citizen and their firearms, it's still related to the law-abiding citizen. Bruin is very clear that we're talking about the law-abiding citizen here. And this is a defendant who is now, on supervised release, carrying a concealed weapon without a permit. I think that's an interesting fact to think about as well. Because even in, as Justice Kavanaugh and the Chief Justice talked about, even in a must-issue state, you could still have reasonable regulations about getting a concealed weapons permit. You could still regulate that conduct. You could still permit that. So in order for the defendant to prevail here, even if there is an as-applied analysis, and we would suggest that given the scheme, and I'll get into that in a minute, given the scheme of behavior, 922 G1, regulating felons, is a limited, narrowly tailored regulation on individual staff firearms. Well, let me ask the question in reverse. So we have clearly said, Woolsey, other cases, we have clearly said that there is a theoretical possibility of an as-applied challenge. Because we've laid out some requirements. What felony would there not be, or what criminal history would it be unconstitutional as applied to an individual? What circumstances would have to be present for us to say that's as applied to that person, it's unconstitutional? Assuming for sake of discussion that there is an as-applied analysis, which some people, some courts seem to have taken that off the table entirely, I think we have to start with a regulatory scheme. What is a felon? And under 922 G, it says that people are prohibited from carrying firearms on 922 G1, having been convicted of a crime punishable by a term of imprisonment greater than one year. But that term is further defined in 921 A20. 921, Title 18, Section 921 A20, has built-in exclusions for felony offenses that do not count. For instance, a felony, a crime that's classified as a felony that's an antitrust violation, an unfair trade practice, restraint on trade, or other similar offenses. Do you think Congress, when it fashioned that exception, was sorting out felonies that it thought indicated dangerousness from those that it thought did not? I think they were certainly looking at sorting out. They also then have a provision on misdemeanors. On misdemeanors that are punishable by an offense classified as a misdemeanor that's punishable by two years or less doesn't qualify. So I think Congress did a sorting there to try and look at the dangerousness in people who would be able to carry a firearm responsibly and those who could not. I was just going to say, but by definition, those would not make the statute unconstitutional as applied if you fit into one of those categories, because they would be accepted as a matter of law. So I'm still trying to figure out, is there some crime or felony that would give rise to a successful as applied challenge? Well, and that's actually where I was trying to drive. With the restraint of trade or other similar offenses, I think that phrase opens the door for, hey, my felony offense, yeah, it was a felony. It was classified as a felony. But it's really more akin to a trade violation. It's more akin to that. So as applied to me, it doesn't count. Then it would be excluded under the exception, though, if it was other or similar. Yes, it would be excluded. But the argument would be, am I excluded under the statute or am I excluded because of my Second Amendment right? And I think that's. But I think the answer you're giving me, and maybe I'm wrong, is that it either comes in under the exclusion or you don't have an as. I mean, you could make it as applied challenge if you're under the exclusion. But there's nothing that's outside of the exclusion that would qualify for an as applied challenge. I know I'm trying to pin you down here and you're resisting a little bit. But that's fine if that's your argument. I just want to be clear about it. Well, and even the Third Circuit went down the path of looking at misdemeanor crimes that were punishable by greater than two years and found that those offenses were amenable to an as applied challenge and ultimately found that they, and they created their test to go through to look at those. But even the Third Circuit, after that, in 2020, in Fulajar, which is 980 F3 897, didn't apply that to offenses that were classified as felonies. So the answer I think that you're giving me is there are none that are not excluded. I just want to get a clear answer. I think it's classified as a felony. It is not subject to it. Unless it's one of those excluded offenses. That's fine. I just wanted to pin you down on that. Now, crimes punishable by greater than one year is a broader term than a felony offense. So we would suggest that under the context of 922 G1, where the offense that is the predicate is classified as a felony under state or federal law, there really should not be an as applied challenge. If there is an as applied challenge analysis available, it should be available for those that small percent on the margins, the small cases that might fit into that. Well, this is more like a restraint of trade type case. Or this is a misdemeanor. It's classified as a misdemeanor in Alaska or wherever they may be. And it's punishable by up to 10 years. I don't know if those offenses exist or not. I just saw it in the Third Circuit. They did have some misdemeanors that were punishable by greater than two years. We have aggravated misdemeanors in Iowa that are punishable by up to two years. So they're felonies for purposes of the rules of evidence, and they're not felonies for purposes of firearms. And I think that would be an appropriate line to draw with that there is no as applied challenge if an offense is punishable as a felony offense. And when looking at as applied to this defendant, this defendant, OWI is, I grew up as an OWI prosecutor my first five years, when Mothers Against Drunk Driving was a huge deal. It is not necessarily a victimless crime. And this defendant not only had one drunk driving, two drunk driving, he had his third drunk driving, which resulted in a felony offense. And his felony possession offense, looking at that underlying offense, that underlying conduct, he was driving drunk then and had a firearm. And the conduct he's engaging in now is carrying a loaded weapon into Walmart, which is a public place. A lot of people go there. He leaves his chair in the front vestibule of Walmart to go and use the Walmart motorized cart to go around the store. And he leaves this loaded firearm in the chair, and he has no permit to carry, no concealed weapons permit of any sort. So he has no authority to carry a concealed weapon on his person anywhere. You mentioned really quick, just a factual question, the drunk driving conviction. One of them involved possessing a weapon. I thought that they never got him for possessing the weapon. It was just the drunk driving conviction, right? The first. On that incident. My recollection is his third drunk driving did not involve a firearm. The fourth time he was stopped, that was the incident offense for the felon of possession offense. So they didn't prosecute him for the drunk driving. That's right. I had it backwards. Thank you. That's helpful. And when you look at the Supreme Court looking at, pardon me. What was your point about the Walmart? Just that he was engaging in dangerous conduct because he was leaving unattended firearm in a wheelchair. And he has no authority to carry a firearm in a concealed way. So one way to think about Second Amendment analysis is open carry versus concealed carry. Certainly, I think the government, the state of Iowa, has the ability to regulate conduct more strictly in a concealed carry context. If you're going to conceal a weapon and walk in the public, the government should be assured that you know what you're doing. And you should have to apply for a permit. So this defendant, in not even going through that regulatory process at all to try and get a concealed carry permit, certainly evidences a disdain for the law that one could equate to a potential for dangerousness or violence. He's also engaged in drug trafficking activity at the same time and carrying the gun as part of a 924C. So all of that together shows that he is. He was convicted under 924C. He was, Your Honor. And the drug offense and the felon in possession. Would you spend one minute on the search before you finish? Yes. Go ahead if you have anything else you want on the search. I'm always willing to talk about what the court wants to talk about. Yeah. Well, the private search is your principal theory there. Absolutely. Walmart people searched. Yeah, and when the little old lady who's the greeter at Walmart is helping the defendant look for his phone because he says he can't find it, she lifts up the seat and sees the firearm in plain view. The officer, she then calls an officer over. The officer is in the same scope, lifts up the seat, sees the firearm, and then seizes the firearm. And even in Jacobson, which is one of the earlier private search cases, as long as they're within the scope and they see something in plain view that's illegal, they can seize it. And in this case, we had probable cause and extra circumstance to seize that firearm as soon as it was seen. Because the defendant was talking ahead of time and said he didn't have a firearm, said he didn't have a concealed carry permit. So all of that resulted in probable cause to seize it as soon as the officer saw it. Does private search still work after Jones and Jardines, where you haven't given up possession of something? Remember, Jacobson was a FedEx. They'd given up possession, and then they found the drugs, they put the drugs back in, and then the cops came. Here, we have a situation in which we've got a hidden or concealed weapon. And I just wonder whether the private search still works in the FedEx instance, where you've given up possession, maybe not so well in the situation in which somebody is trespassing on your property. I think it does. I think it still works, because it's still a reasonable expectation of privacy. Do you have a reasonable expectation of privacy? But that's only half now. I mean, that's half. We still have to look, but go ahead. But even in this context, he's got, look at what was his expectation of privacy in this chair? He's leaving it in public, in a public place, sitting there in Walmart. So there is a diminished expectation of privacy. He doesn't have it locked up. He doesn't have a locked container. It's not like the Walmart lady broke into a sealed container or a locked container on the chair. She lifted up the cushion, trying to help the defendant find his phone. Now, you could argue abandonment, but isn't it still a trespass? I don't believe so. And I see I'm out of time. Very well. Thank you for your argument. Ms. Nash, I'll hear from you in rebuttal. Thank you. Just briefly address a few of the points raised. First, 922 G1 regulates possession and not concealed carrying. And Bruin tells us that the conduct that we look at when we're deciding whether or not the conduct is covered by the Second Amendment is the conduct that's regulated by the statute. It's not the conduct that the petitioners in that case, in Bruin, wanted to engage in, what they wanted to do. It's what New York's regulatory scheme regulated. Second, I would briefly address the search issue. Thank you. Mr. Cunningham did not have a diminished expectation of privacy in the wheelchair by leaving it at the front area of the Walmart in the vestibule. Mr. Cunningham surely would not have expected law enforcement to come up and go into his personal space and rifle through his things had he left them there. What about exigent circumstance? I want to give you a chance, because I think leaving an unattended firearm at a Walmart is a big problem, once they know it. And I think that's, candidly, the toughest hurdle to get over in this case. What I would point to here is that Officer Mathis, the law enforcement officer who responded to the scene, when she approached, she did not attempt to place herself between Mr. Cunningham and the wheelchair. She did not attempt to secure the firearm immediately. She stood on the opposite side of Mr. Cunningham with the wheelchair on the other side of Mr. Cunningham, and she asked him questions. And she spent, I believe it was more than a minute doing so, asking him questions like, do you have a permit to carry? What's your name? Can I see your identification? If the circumstances were truly exigent, she would have immediately secured that firearm, and she did not do that here. And for that reason, our position is that exigent circumstances do not accept the search in this case. Thank you, Your Honors. Very well. Thank you for your argument. The case is submitted. The court will file a decision in due course.